**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| EMPRESAS STEWART CEMENTERIOS d/b/a Cementerio Los Cipreses<br><br>**Plaintiff,**<br><br>v.<br><br>CENTRAL GENERAL DE TRABAJADORES; JOSE ADRIÁN LÓPEZ PACHECHO; SCOTT BARBÉS, and any other individual in active concert or participating with them.<br><br>**Defendants,** | **CIVIL NO.**<br><br><br>**RE: BREACH OF COLLECTIVE BARGAINING AGREEMENT, INJUNCTION & DAMAGES** |

**VERIFIED COMPLAINT**

**TO THE HONORABLE COURT:**

**COMES NOW** Plaintiff Empresas Stewart Cementerios d/b/a Cementerio Los Cipreses (hereinafter referred to as "Plaintiff" or "Empresas Stewart") through its undersigned attorneys and respectfully states and prays as follows:

### I.   JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked under Sections 301(a) and 303 of the Labor Management Relations Act (hereinafter referred to as the "LMRA"), 29 USC §§ 185(a) and 187, as interpreted by the Supreme Court of the United States in <u>Boy's Market Inc. v. Retail Clerk Union,</u> 398 US 235 (1970). As such, this Court possesses federal question subject matter jurisdiction. 28 USC § 1331.

2. This Court has supplemental jurisdiction, pursuant to 28 USC 1367(a), to issue an injunction, under Article 690 of the PR Code of Civil Procedure, enjoining the codefendants,

Central General de Trabajadores (hereinafter referred to as "CGT" or the "Union"), José Adrián López Pacheco (hereinafter referred to as "López") and Scott Barbés (hereinafter referred to as "Barbés"), from interfering with the possession and property rights of Empresas Stewart. PR Laws Ann. tit. 32, § 3561.

3. Venue properly lies in this Court pursuant to Section 301(c) of the Act, 29 USC § 185 (c), since this is the judicial district in which the Union maintains its principal office, as well as the district in which the Union is engaged in representing or acting for employee members.

4. Section 303(b) of the LMRA allows for a suit against the Union for violation of a collective bargaining agreement and the issuing of an injunction, as well as for an award of damages against the Union. 29 USC § 187 (c).

## II. PARTIES

5. Empresas Stewart is a civil society, duly authorized to do business in Puerto Rico and with capacity to sue and be sued. At all times relevant to the instant action, Empresas Stewart has been, and still is, engaged in providing cemetery, cremation and funeral services, with various locations throughout Puerto Rico, including Cemetery Los Cipreses. As such, Empresas Stewart is an entity engaged in interstate commerce within the meaning of Section 2 (7) of the LMRA, 29 USC § 152 (7).

6. Cemetery Los Cipreses, which is owned and operated by Empresas Stewart, is located in Carr. 840, Bayamón. Empresas Stewart currently employs in Cemetery Los Cipreses eleven (11) unionized employees represented by the CGT and fifteen (15) administrative non-unionized employees.

7. Upon information and belief, the Union is an incorporated association and labor organization with offices and place of business in San Juan, Puerto Rico. The Union is the

exclusive collective bargaining representative for services and maintenance employees of Empresas Stewart in Cemetery Los Cipreses. **Articles I and II of Exhibit A**. According to the Puerto Rico Registry of Corporations, the Union's mailing address is PO Box 2240, Bayamón, Puerto Rico 00960. Upon information and believe, its telephone number is 787-295-4924. The Union is a labor organization within the meaning of Section 2(5) of the LMRA, 29 USC § 152(5).

8. Upon information and belief, López is the President of the Union and, as officer of the Union, has instigated, encouraged, authorized, and/or condoned an illegal sit in, work stoppage, and/or slowdown occurred during the morning of June 29, 2022, and other unlawful concerted activities charged herein that caused, and will continue to cause, irreparable harm to Empresas Stewart.

9. Upon information and belief, Barbés is a representative of the Union and, as officer of the Union, has instigated, encouraged, authorized, and/or condoned an illegal sit in, work stoppage, and/or slowdown occurred during the morning of June 29, 2022, and other unlawful concerted activities charged herein that caused, and will continue to cause, irreparable harm to Empresas Stewart.

### III.   COLLECTIVE BARGAINING AGREEMENT

10. On June 25, 2021, Empresas Stewart and the Union executed a collective bargaining agreement (hereinafter referred to as the "Agreement" or the "CBA"). The CBA is in full force and effect until June 24, 2024. See **Exhibit A**.

11. Article VI of the CBA, titled "Outsourcing", provides that:

> The work normally realized by the bargaining unit will be assigned to the employees covered by this Agreement, according to the occupational classifications stated in the Agreement, and said work will not be assigned to any person outside the bargaining unit, except

for purposes of training or in case of emergency… It is accepted the outsourcing of landscaping in specific areas and chapel areas.

**Article VI of Exhibit A.** (translation ours).

12. Article XX of the CBA, titled "Prohibition of Strikes, Lock-Out", contains a "no-strike clause" by which the CGT, its officers, as well as Plaintiffs' employees who are members of the appropriate bargaining unit (hereinafter referred to as "Union members"), waive their right to engage in a strike, during the term of the CBA. Specifically, Article XX provides that: "The Union agrees to not declare, authorize or ratify strikes during the period covered by this Agreement, about matters or differences between the parties, and, according to that, no official, steward or member of the Union will order a work stoppage of employees." **Article XX of Exhibit A**. (translation ours).

13. Article XIV of the CBA contains a grievance and arbitration process clause, which requires the Union complies with a mandatory grievance and arbitration procedure in relation to any controversy between the parties, including controversies, disputes, conflicts or a matter of interpretation between the Union and Empresas Stewart that involves the meaning or application of a specific provision of the Agreement, or any other controversy. **Article XIV of Exhibit A**.

### IV. FACTUAL ALLEGATIONS

14. On June 21, 2022, while Dixie Lleras (hereinafter referred to as "Lleras"), General Manager of Cemetery Los Cipreses, was on vacation leave, Alejandro Alicea (hereinafter referred to as "Alicea"), Union Steward, submitted a complaint to Empresas Stewart under the grievance process, which complaint alleged that: "The Company is outsourcing work that normally is performed by the unit, in violation of the collective bargaining agreement Art. VI". **Exhibit B.**

15. Shortly before Alicea submitted the aforementioned complaint, Empresas Stewart had outsourced certain services that had not, and could not, be performed by Union members. Specifically, Empresas Stewart encountered certain stones that had to be demolished and removed from the ground in order to allow burials to take place at certain areas of the Cemetery.

16. On June 29, 2022, Cemetery Los Cipreses was scheduled to open in its regular operating hours from 8:00 a.m. until 5:00 p.m. The Cemetery had scheduled five (5) burials for June 29, 2022, specifically at 10:00 a.m., 11:00 a.m., 1:00 p.m., 2:00 p.m. and 2:45 p.m.

17. On June 29, 2022, on or around 9:17 a.m., union officer Barbés showed up to Cemetery Los Cipreses and parked his pickup truck in the entrance of the Cemetery, limiting employees, public and other individuals' access to the Cemetery. **Exhibit C.** Barbés voiced his discontent with the work outsourced by Empresas Stewart.

18. On or around 9:30 a.m., Empresas Stewart communicated with López to explain that the services it outsourced were services that could not be performed by the Union members due to the size of the stones to be demolished and removed. Additionally, it was mentioned that Union members previously tried to perform the task but they could not do it.

19. On said date, on or around 10:30 a.m., Barbés moved his pickup truck and blocked the main entrance of Cemetery Los Cipreses. Because Barbés blocked the entrance of Cemetery Los Cipreses, Empresas Stewart contacted the Puerto Rico Police Bureau, who, upon information and believe, fined Barbés and requested him to allow access to the Cemetery. Nonetheless, Empresas Stewart's efforts where futile and Barbés remained blocking the Cemetery Los Cipreses' entrance. **Exhibit D.** Indeed, the Puerto Rico Police Bureau informed Empresas Stewart that, without a Court Order, they would not remove Barbés or his pickup truck from the Cemetery.

Empresas Stewart filed a complaint with the Puerto Rico Police Bureau, which was assigned number 2022-7-211-5206.

20. Also, Empresas Stewart requested López that Barbés truck be removed and that he cease and desist from blocking the entrance of the Cemetery, among other things, as he was obstructing the scheduled burials and affecting the operation of the Cemetery.

21. Empresas Stewart also communicated with Barbés and requested him to move his vehicle, to which he refused, until Empresas Stewart met with the Union to discuss a controversy about the interpretation of Article VI of the CBA related to the outsourcing of the service hired for the destruction of industrial stones. Barbés also demanded that the subcontracted services cease. Although, Empresas Stewart agreed to meet with the Union the next day, June 30, 2022, at 10:00 a.m., and that the specialized machinery was turned off, as requested by the Union, Barbés unreasonably refused to allow access to Cemetery Los Cipreses and threatened that if any of the employees tried to enter the Cemetery from another entrance and perform a burial "he will cause pandemonium". **Exhibit E.**

22. During the conversations between Empresas Stewart and Barbés, the former informed Barbés that he was causing an unlawful strike in violation of the CBA, and his response was that Empresas Stewart should take him to the National Labor Relations Board.

23. On or around 11:00 a.m., while still blocking the entrance of Cemetery Los Cipreses, Barbés called Union members for an assembly and held a meeting at the entrance of Cemetery Los Cipreses. **Exhibit F.** Although the meeting occurred during regular business hours, families where inside the Cemetery waiting for their services, and burials were scheduled, all Union members attended the assembly and stopped working.

24. During the illegal sit in, work stoppage, and/or slowdown, Lleras requested Union members to perform the scheduled burials, but Barbés and Alicea did not allow them to work.

25. The next day, on June 30, 2022, Empresas Steward had a conference call with Barbés via Microsoft Teams, to discuss the Union's complaints. During the call, Empresas Steward reiterated its willingness to engage in good faith discussions and to address any complaints the Union may have, according to the procedures established in the CBA. Empresas Steward reminded Barbés that the CBA includes a mandatory grievance and arbitration procedure and includes a no-strike clause that the Union violated the day before. After Barbés admitted that the Union's June 29 sit in, work stoppage, and/or slowdown violated the CBA's non-strike clause, on various occasions Empresas Steward asked Barbés to confirm that the Union would refrain from any additional violations to the CBA's non-strike clause. Barbés refused, and in no uncertain terms stated that the Union could go to strike if they felt that their grievances were not addressed. As such, the Union confirmed that there is an ongoing threat that they will continue to violate the CBA's non-strike clause and that a sit in, work stoppage, and/or slowdown can occur at any time.

26. Article XIV of the CBA provides for mandatory grievance and arbitration related to any matter related to any controversy between the parties, including controversies, disputes, conflicts or a matter of interpretation between the Union and Empresas Steward that involves the meaning or application of a specific provision of the Agreement, or any other controversy.

27. The controversy alleged by the Union falls within the controversies, disputes, conflicts or matters of interpretation subject to the mandatory grievance and arbitration process, set forth in Article XIV of the CBA.

28. By instigating, encouraging, authorizing, and/or condoning the illegal sit in, work stoppage, and/or slowdown, defendants attempted to pressure Empresas Stewart on a controversy,

which according to the CBA, must be resolved through the grievance and arbitration procedure without affecting the business operations.

29. As a result of the Union's illegal sit in and work stoppage, Empresas Stewart's operation was directly affected, and it could not render effectively its services to the families that had scheduled services in the Cemetery. Among the services affected, Empresas Stewart had to reschedule five (5) burials and meetings scheduled with clients who could not access Cemetery Los Cipreses and left, and families could not access the Cemetery to make payments for services offered by Empresas Stewart.

30. The Union and its officers breached the CBA, particularly the no-strike clause contained in Article XX of the CBA when it organized, encouraged, instigated and condoned the beforementioned concerted activities against Empresas Stewart.

31. Empresas Stewart requested the Union to cease and desist from the activities in question, and to call off the sit-in and work stoppage, and proposed alternatives to resolve all disputes arising under the CBA.

## V. IRREPARABLE HARM

32. The unlawful acts described herein were authorized and/or ratified and/or condoned by the defendants and such acts will continue unless restrained by this Court.

33. Empresas Stewart offers essential services to the families of Puerto Rico, which services are highly regulated by the Puerto Rico Department of Health, to ensure the proper burial of their loved ones. The interruption of the essential services offered by Empresas Stewart can cause an irreparable damage not only to the Plaintiff but to the families that want to bury their loved ones at the Cemetery. Additionally, the obstruction of realizing the burial processes, as required under the applicable regulation and laws, represents a risk to the public health.

34. As a direct consequence of defendants' unlawful concerted activities, Empresas Stewart will suffer permanent and irreparable damage and injury in the form of lost goodwill and image, loss of customer confidence with regards to prompt and adequate burial, probable loss of customers, diminished volume of business, loss of revenue, claims or charges for failure to comply with applicable regulation and laws, and insurance claims. These losses are estimated to be $100,000 a day.

35. In Boys Market, Inc., v. Retail Clerks Union, Local 770, 398 US 235, 90 S. Ct. 1583 (1970), the Supreme Court recognized an exception to the anti-injunction provisions of the Norris-La Guardia Act, 29 USC §107, and held that an injunction could be issued to end strikes pending arbitration if the grievance or dispute underlying the strike is arbitrable. 398 US at 253, 90 S. Ct. at 1594. Pursuant to Boys Market, if the strike or picketing is in violation of the agreement and it is over an arbitrable dispute, an injunction should be issued to avoid irreparable injury to the employer. Refusal to arbitrate should not be tolerated when both parties have contractually bound themselves to that problem-solving solution.

36. Empresas Stewart has no adequate remedy at law for the injuries already caused and the threat of further injury by the Union and its officers' illegal conduct, and, unless an injunction is issued, will continue to suffer irreparable injury. Additionally, in Boys Market, *supra,* the Supreme Court determined that an injunction is the adequate remedy when an employer suffers irremediable harm because of a violation by the Union of a non-strike clause stipulated in the CBA.

37. Empresas Stewart will suffer irreparable damages from the denial of an injunction. On the other hand, the Union will not suffer from its issuance, since, in any case, the Union can seek relief through the parties' agreed-upon grievance and arbitration procedure under the CBA.

38. Empresas Stewart has complied with all obligations imposed by law that are involved in this labor dispute and has made every reasonable effort to resolve this labor dispute by negotiation and voluntary arbitration. Empresas Stewart has not refused to arbitrate or submit to the grievance proceedings established in the labor contracts and is willing to do so.

39. Empresas Stewart is likely to prevail on the merits of this Verified Complaint. The Union, and its officers, engaged in acts clearly and intentionally in violation to the applicable CBA and the law.

**WHEREFORE**, Empresas Stewart, respectfully moves the Court to issue a Judgment:

(1) Granting Plaintiff a preliminary and permanent injunction, restraining, enjoining or condoning the defendants, and any other persons in active concert or participation with them, or any of them, from continuing, calling, threatening, instigating, directing, encouraging, causing, assisting, participating or condoning in any sit-in, work stoppage, refusal to work, strike, or any other form of concerted activity intended or tending to interrupt the normal operations of Empresas Stewart over any interpretation or application of the CBA;

(2) directing the defendants, along with the Plaintiff, to proceed in accordance with the CBA described herein and submit, if requested by the Union, any such grievance to arbitration, pursuant to the provisions of the Agreement;

(3) awarding the Plaintiff damages and lost revenue caused by defendants' unlawful activities, which are estimated at $100,000 per day during which the Union has allowed the illegal conduct to take place.

(4) granting such other and further relief to which Empresas Stewart may be entitled under the circumstances and disbursements incurred in this action, including costs and attorneys' fees.

**VERIFICATION**

I, Zulma Acosta, of legal age, married, Market Director of Empresas Stewart, and resident of Caguas, Puerto Rico, state under penalty of perjury under the laws of the United States of America, that the factual averments of the Verified Complaint are true to the best of my knowledge and belief, except as to those matters alleged upon information and belief, which I also believe to be true.

Executed on this 5th day of July, 2022, in San Juan, Puerto Rico.

_____
ZULMA ACOSTA

**RESPECTFULLY SUBMITTED.**

**WE HEREBY CERTIFY** that, on this date, we electronically filed the foregoing with the Clerk of the Court using the CM/EF system.

In San Juan, Puerto Rico, this 5th day of July, 2022.

**PIETRANTONI MÉNDEZ & ÁLVAREZ LLC**
Popular Center, 19th Floor
208 Ponce de Leon Ave.
San Juan, Puerto Rico 00918
Tel. (787) 274-1212  Fax. (787) 274-1470

/s/ Diego Murgia Díaz
Diego Murgia Díaz
USDC No. 225704
dmurgia@pmalaw.com

/s/ Marcia C. Laurido Soto
Marcia C. Laurido Soto
USDC No. 306012
mlaurido@pmalaw.com