THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **EMPRESAS STEWART CEMENTERIOS**, <br><br>     *Plaintiff,* <br><br> **v.** <br><br> **CENTRAL GENERAL DE TRABAJADORES**, *et al.*, <br><br>     *Defendants.* | Civ. No. 22-01320 (MAJ) |

## OPINION AND ORDER

On July 5, 2022, Empresas Stewart Cementerios ("Plaintiff") filed a Complaint against Central General de Trabajadores ("Union"), José Adrián López Pacheco ("López"), and Scott Barbés ("Barbés") (collectively "Defendants") arising out of the alleged breach of their collective bargaining agreement ("CBA"). (**ECF No. 1**). Plaintiff seeks a preliminary and permanent injunction restraining Defendants from striking under Section 301 and Section 303(b)[1] of the Labor Management Relations Act ("LMRA") and Article 690 of the Puerto Rico Code of Civil Procedure.[2] (**ECF No. 1 at ¶¶ 1-4**). Plaintiff also seeks an injunction directing both parties to proceed with arbitration. *Id.* at 10 ¶ 2. Finally, Plaintiff seeks damages under Section 303(b) of the LMRA. *Id.* at 2 ¶ 4.

On October 31, 2022, Defendants filed a Motion to Dismiss or Stay pending resolution of the charge filed by Plaintiff with the National Labor Relations Board

---

[1]     As will be outlined below, the Court interprets Plaintiff's request for injunctive relief to be under both Section 301 and Section 303(b) of the LMRA.
[2]     The Puerto Rico Code of Civil Procedure section appears to be from the 1933 version. The current version can be found at 32 L.P.R.A. § 3561.

("NLRB"). (**ECF No. 19**). Defendants seek dismissal on what can be summarized as four main grounds: (1) Plaintiff is not entitled to injunctive relief under Section 303 of the LMRA, 29 U.S.C. § 187; (2) Section 4 of the Norris-LaGuardia Act, 29 U.S.C. § 104 bars Plaintiff's claim for injunctive relief; (3) Plaintiff has insufficiently pled liability on the part of López and the Union; and (4) Plaintiff did not file a separate motion for preliminary injunction nor a proposed order. *Id*. at 9-10, 16.

On December 14, 2022, Plaintiff filed a response. (**ECF No. 24**). On March 16, 2023, the Court held the Motion to Dismiss or Stay in abeyance until Defendants filed an Answer. (**ECF No. 31**). On May 8, 2023, Defendants filed their Answer. (**ECF No. 45**). Pending before the Court is Defendants' Motion to Dismiss or Stay.[3] (**ECF No. 19**). For the reasons stated hereafter, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's Motion to Dismiss.

## I.      Collective Bargaining Agreement[4]

Plaintiff is a cemetery, cremation, and funeral service business with various locations throughout Puerto Rico including Cemetery Los Cipreses. (**ECF No. 1 at 2 ¶ 5**). The Union is an incorporated association and labor organization operating out of San Juan, Puerto Rico. *Id*. at 2 ¶ 7. The Union is the exclusive collective bargaining representative for services and maintenance employees of Cemetery Los Cipreses ("Cemetery"). *Id*. at 2 ¶¶ 6-7.

Defendant López serves as the President and Barbés as a representative, respectively, of the Union. *Id*. at 3 ¶¶ 8-9.[5]

---

[3]       The request for a stay has become moot given Plaintiff's withdrawal of its NLRB charge. (**ECF No. 24 at 2 n.1**). The NLRB allegedly approved the withdrawal on November 9, 2022.

[4]       The certified translation of the CBA can be found at **ECF No. 6-1 at 2-36**.

[5]       The parties do not dispute that the instant action is a labor dispute for purposes of the LMRA and this Court's jurisdiction. *See* (**ECF No. 1 at 10 ¶ 38**); (**ECF No. 19 at 26**).

On June 25, 2021, Plaintiff and the Union executed a CBA, which is in effect until June 24, 2024. *Id.* at 3 ¶ 10. Article VI of the CBA provides that:

> The work normally realized by the bargaining unit will be assigned to the employees covered by this Agreement, according to the occupational classifications stated in the Agreement, and said work will not be assigned to any person outside the bargaining unit, except for purposes of training or in case of emergency . . . It is accepted the outsourcing of landscaping in specific areas and chapel areas.

*Id.* at 3 ¶ 11; (**ECF No. 6-1 at 9**). Article XX of the CBA, titled "Prohibitions of Strikes, Lock-Out," states "[t]he Union agrees to not declare, authorize or ratify strikes during the period covered by this Agreement, about matters or differences between the parties, and, according to that, no official, steward or member of the Union will order a work stoppage of employees." (**ECF No. 1 at 4 ¶ 12**); (**ECF No. 6-1 at 24**). Plaintiff alleges this is binding over the Union and its officers, "as well as Plaintiff's employees who are members of the appropriate bargaining unit (hereinafter referred to as 'Union members') . . ." (**ECF No. 1 at 4 ¶ 12**). Finally, Article XIV of the CBA:

> [c]ontains a grievance and arbitration process clause, which requires the Union complies with a mandatory grievance and arbitration procedure in relation to any controversy between the parties, including controversies, disputes, conflicts or a matter of interpretation between the Union and Empresas Stewart that involves the meaning or application of a specific provision of the Agreement, or any other controversy.

*Id.* at 4 ¶ 13; (**ECF No. 6-1 at 17**).

## II.   Background

On June 21, 2022, Alejandro Alicea ("Alicea"), Union Steward, filed an internal complaint to Plaintiff under the grievance process alleging that the Cemetery "is outsourcing work that normally is performed by the unit in violation of the collective bargaining agreement Art. VI." (**ECF No. 1 at 4 ¶ 14**); (**ECF No. 6-1 at 9**). At the time, the general manager of the Cemetery was on vacation. (**ECF No. 1 at 4 ¶ 14**). Shortly

before Alicea submitted the grievance, Plaintiff states it "had outsourced certain services that had not, and could not, be performed by Union members. Specifically, [Plaintiff] encountered certain stones that had to be demolished and removed from the ground in order to allow burials to take place at certain areas of the Cemetery." *Id.* at 5 ¶ 15.

On June 29, 2022, the Cemetery had five burials scheduled. *Id.* at 5 ¶ 16.  At 9:17 am, Barbés arrived at the Cemetery and parked his pickup truck partially blocking the entrance, limiting access to the Cemetery. *Id.* at 5 ¶ 17. At around 9:30 am, Plaintiff allegedly communicated with López "to explain that the services it outsourced were services that could not be performed by the Union members due to the size of the stones to be demolished and removed." *Id.* at 5 ¶ 18. "Additionally, it was mentioned that Union members previously tried to perform the task, but they could not do it." *Id.* Thereafter, at around 10:30 am, Barbés moved his truck so that it again blocked the access to the Cemetery. *Id.* at 5 ¶ 19.

At this point, Plaintiff requested to López that Barbés cease and desist from blocking the entrance of the Cemetery as, among other things, he was obstructing the scheduled burials. *Id.* at 6 ¶ 20. Plaintiff also directly communicated with Barbés, who stated he would not move until Plaintiff and the Union discussed the outsourcing of the destruction of the industrial stones. *Id.* at 6 ¶ 21. Although Plaintiff turned off specialized machinery as requested by the Union, and also agreed to meet the next day, Barbés still refused access to the Cemetery and threatened that "if any of the employees tried to enter the Cemetery from another entrance and perform a burial 'he will cause pandemonium'." *Id.*; (**ECF No. 6-3 at 1**). Plaintiff informed Barbés he was causing an unlawful strike in violation of the CBA, to no avail. (**ECF No. 1 at 6 ¶ 22**).

Plaintiff ultimately contacted the Puerto Rico Police Bureau, who thereafter fined Barbés and requested he allow access to the Cemetery to no avail. *Id.* at 5 ¶ 19. The police informed Plaintiff that without a court order, they could not remove Barbés or his truck from the entrance. *Id.* Regardless, Plaintiff filed a complaint with the Puerto Rico Police Bureau. *Id.*

At around 11:00 am, while still blocking the entrance, Barbés "called [the] Union members for an assembly and held a meeting at the entrance of [the] Cemetery []." *Id.* at 6 ¶ 23. Importantly, the meeting took place during normal business hours, as families waited inside for their services and scheduled burials. *Id.* Plaintiff requested that the Union members perform the scheduled burials, "but Barbés and Alicea did not allow them to work." *Id.* at 7 ¶ 24. As a result of the "work stoppage," Plaintiff had to reschedule five burials as well as meetings scheduled with clients who could not access the facility. *Id.* at 8 ¶ 29.

On June 30, 2022, Plaintiff had a conference call with Barbés via Microsoft Teams to discuss the Union's complaints. *Id.* at 7 ¶ 25. "During the call, [Plaintiff] reiterated its willingness to engage in good faith discussion and to address any complaints the Union may have, according to the procedures established in the CBA." *Id.* Barbés admitted that the Union's "work stoppage" the previous day violated the CBA, although he refused to commit to refraining from future additional violations when requested by Plaintiff and stated that the Union could strike if they felt their grievances were not addressed. *Id.* As such, Plaintiff alleges "the Union confirmed that there is an ongoing threat that they will continue to violate the CBA's non-strike clause and that a sit in, work stoppage, and/or slowdown can occur at any time." *Id.*

### III.    Legal Standard

When addressing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), Courts should "accept as true all well-pleaded facts in the complaint and draw all reasonable inferences in favor of the plaintiff[]." *Gargano v. Liberty Int'l Underwriters, Inc.*, 572 F.3d 45, 48 (1st Cir. 2009) (citing *Fitzgerald v. Harris*, 549 F.3d 46, 52 (1st Cir. 2008). Under *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007), a plaintiff must "provide the 'grounds' of his 'entitle[ment] to relief' [with] more than labels and conclusions." *Ruiz Rivera v. Pfizer Pharm., LLC*, 521 F.3d 76, 84 (1st Cir. 2008); *see also Ocasio-Hernández* v. *Fortuño-Burset*, 640 F.3d 1, 12 (1st Cir. 2011) ("[I]n order to 'show' an entitlement to relief a complaint must contain enough factual material 'to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact).") (quoting *Twombly*, 550 U.S. at 555) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678-80 (2009))). Thus, a plaintiff is required to present allegations that bring "their claims across the line from conceivable to plausible" to comply with the requirements of Rule 8(a). *Twombly*, at 570; *see, e.g., Iqbal*, 556 U.S. 662.

When considering a motion to dismiss, the Court's analysis occurs in a two-step process under the current context-based "plausibility" standard established by *Twombly*, 550 U.S. 544 and *Iqbal*, 556 U.S. 662. "Context based" means that a plaintiff must allege sufficient facts that comply with the basic elements of the cause of action. *See Iqbal*, at 680-81 (concluding that plaintiff's complaint was factually insufficient to substantiate the required elements of a *Bivens* claim, leaving the complaint with only conclusory statements). First, the Court must "accept as true all of the allegations contained in a complaint [,]" discarding legal conclusions, conclusory statements, and factually

threadbare recitals of the elements of a cause of action. *Iqbal*, at 678; *see also Mead v. Independence Ass'n*, 684 F.3d 226, 231 (1st Cir. 2012) ("Any statements in the complaint that are either legal conclusions couched as facts or bare bones recitals of the elements of a cause of action are disregarded." (citing *Iqbal*, at 678; *Ocasio-Hernández*, 640 F.3d at 12)).

In the second step of the analysis, the Court must determine whether, based on all assertions not discarded in the first step, the complaint "states a plausible claim for relief." *Iqbal*, at 679. This second step is "context-specific" and requires that the Court draw from its own "judicial experience and common sense" to decide whether a plaintiff has stated a claim upon which relief may be granted or, instead, whether dismissal under Federal Rule of Civil Procedure 12(b)(6) is warranted. *Id.*

"To survive a motion to dismiss, a plaintiff must allege facts sufficient to state a plausible claim for relief." *Doe v. Stonehill College, Inc.*, 55 F.4th 302, 316 (1st Cir. 2022) (citing *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Iqbal*, at 679 (quoting Fed. R. Civ. P. 8(a)(2)). Furthermore, such inferences must be at least as plausible as any "obvious alternative explanation.*" Id.* at 682 (citing *Twombly*, 550 U.S. at 567).

The First Circuit has warned against equating plausibility with an analysis of the likely success on the merits, affirming that the plausibility standard assumes "pleaded facts to be true and read in a plaintiff's favor" "even if seemingly incredible." *Sepúlveda-Villarini v. Dep't of Educ. of P.R.*, 628 F.3d 25, 30 (1st Cir. 2010) (citing *Twombly*, 550 U.S. at 556); *Ocasio-Hernández*, at 12 (citing *Iqbal*, at 681); *see also Twombly*, at 556

("[A] well-pleaded complaint may proceed even if it appears that a 'recovery is very remote and unlikely.'" (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974))); *Ocasio-Hernández*, at 12 ("[T]he court may not disregard properly pled factual allegations, 'even if it strikes a savvy judge that actual proof of those facts is improbable.'" (citing *Twombly*, at 556)). Instead, the First Circuit has emphasized that "[t]he make-or-break standard . . . is that the combined allegations, taken as true, must state a plausible, [but] not a merely conceivable, case for relief." *Sepúlveda-Villarini*, 628 F.3d at 29 (citing *Iqbal*, at 678-79).

But a complaint that rests on "bald assertions" and "unsupportable conclusions" will likely not survive a motion to dismiss. *See Alston v. Spiegel*, 988 F.3d 564, 573 (1st Cir. 2021) (quoting *Aponte-Torres v. Univ. of P.R.*, 445 F.3d 50, 55 (1st Cir. 2006)). Similarly, bare factual assertions as to the elements of the cause of action are inadequate as well. *Peñalbert-Rosa v. Fortuño-Burset*, 631 F.3d 592, 595-96 (1st Cir. 2011) (citing *Sanchez v. Pereira-Castillo*, 590 F.3d 31, 49 (1st Cir. 2009); *Maldonado v. Fontanes*, 568 F.3d 263, 274 (1st Cir. 2009)). "Specific information, even if not in the form of admissible evidence, would likely be enough at [the motion to dismiss] stage; pure speculation is not." *Peñalbert-Rosa*, 631 F.3d at 596.

## IV.    Applicable Law and Analysis

Defendants seek dismissal based on four main grounds: (1) Plaintiff is not entitled to injunctive relief under Section 303 the LMRA; (2) Section 4 of the Norris-LaGuardia Act, 29 U.S.C. § 104 bars Plaintiff's claim for injunctive relief; (3) Plaintiff has insufficiently pled liability on the part of López and the Union; and (4) Plaintiff did not file a separate motion for preliminary injunction nor a proposed order. Each argument will be addressed in turn.

**A. Plaintiff's Claim for Injunctive Relief Under Section 303 of the LMRA, 29 U.S.C. § 187**

In its Complaint, Plaintiff invokes jurisdiction of this Court under both Section 301(a) and 303 of the LMRA, "as interpreted by the Supreme Court of the United States in *Boys Markets Inc., v. Retail Clerk Union*, 398 US 235 (1970)." (**ECF No. 1 at 1 ¶ 1**) Thereafter, it argues it is entitled to injunctive relief under Section 303 of the LMRA. *Id.* at 2 ¶ 4. However, in support of this argument, Plaintiff cites to the Supreme Court's holding in *Boys Markets, Inc.,* which allows for injunctive relief under Section 301 of the LMRA in certain circumstances. 398 U.S. at 254. In its Motion to Dismiss, Defendants argue that Plaintiff is not entitled to injunctive relief under Section 303 of the LMRA. (**ECF No. 19 at 3**). In response, Plaintiff clarifies it is seeking injunctive relief under both Section 301 and Section 303 of the LMRA.[6] (**ECF No. 24 at 9 and n. 14**).

To the extent Plaintiff is seeking injunctive relief under Section 303 of the LMRA, Defendants are correct that Plaintiff is not entitled to this relief. Section 303 of the LMRA states:

> Unlawful Activities or Conduct; Right to Sue; Jurisdiction; Limitations; Damages
>
> (a) It shall be unlawful, for the purpose of this section only, in an industry or activity affecting commerce, for any labor organization to engage in any activity or conduct defined as an unfair labor practice in Section 158(b)(4) of this title.
>
> (b) Whoever shall be injured in his business or property by reason or any violation of subsection (a) may sue therefor in any district court of the United States subject to the limitations and provisions of section 185 of this title without respect to the amount in controversy, or in any other court having jurisdiction of the parties, and shall recover the damages by him sustained and the cost of the suit.

---

[6]     The Court will address Plaintiff's request for injunctive relief under Section 301 of the LMRA below.

29 U.S.C. § 187. The statute clearly only allows for damages, not injunctive relief. Accordingly, Defendants' Motion to Dismiss as to this point is **GRANTED**.

### B. The Norris-LaGuardia Act, 29 U.S.C. § 104

Next, Defendants argue that the Norris-LaGuardia Act bars Plaintiff from obtaining injunctive relief in the instant matter. By way of background, "the Norris-La Guardia Act of 1932 . . . prohibited federal courts from granting injunctive relief in labor disputes." *Verizon New Eng., Inc. v. Intl. Broth. of Elec. Workers, Loc. No. 2322*, 651 F.3d 176, 183 (1st Cir. 2011). The intention behind this was to limit federal courts' ability to intervene in labor disputes. *Boys Markets, Inc.*, 398 U.S. at 251. Thereafter, however, the LMRA was enacted, "which gave federal courts jurisdiction over suits alleging violations of collective bargaining agreements." *Verizon New Eng., Inc.*, 651 F.3d at 183 (quoting 29 U.S.C. § 185(a)). Section 301(a) of the LMRA states:

> Suits by and against labor organizations
>
> (a)    Venue, amount, and citizenship
>
> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185. Accordingly, there was some tension between the Norris-La Guardia Act and the LMRA, because:

> the very purpose of arbitration procedures is to provide a mechanism for the expeditious settlement of industrial disputes without resort to strikes, lockouts, or other self-help measures. This basic purpose is obviously largely undercut if there is no immediate, effective remedy for those very tactics that arbitration is designed to obviate. The Court expressed concern that incentives for employers to agree to submit to grievances to arbitration would be inappropriately dissipated if employers were deprived of injunctive relief to enforce the quid pro quo of a no strike clause.

*Verizon New Eng., Inc.,* at 184 (quoting *Boys Markets*, at 249).

In an effort to remedy this tension, the Supreme Court, in *Boys Markets, Inc.*, "held that, despite the anti-injunction provisions of § 4 of the [Norris-La Guardia Act], a federal court in LMRA § 301(a) cases may issue injunctive relief to protect the effectiveness of arbitration agreements," (hereinafter "*Boys Markets* injunction"). *Id.,* at 183; 398 U.S. 235. In that case, the Supreme Court established that:

> [a] district court may grant a *Boys Markets* injunction provided the petitioner establishes that: (1) a collective bargaining agreement between the parties provides for mandatory binding arbitration; (2) the dispute giving rise to the concerted action which is sought to be enjoined is subject to binding arbitration under that agreement; and (3) ordinary principles of equity warrant injunctive relief.

*Otis Elevator Co. v. Intl. Union Of Elevator Constructors, Loc. 4,* 408 F.3d 1, 7 (1st Cir. 2005) (citing *Nat'l Elevator Indus. v. Int'l Union of Elevator Constructors*, 776 F.2d 374, 376-77 (1st Cir. 1985)). Thus, injunctive relief is permitted under Section 301 of the LMRA in certain circumstances.

### i.    *Boys Markets* Injunction First Requirement

In the case at bar, Plaintiff requests a preliminary and permanent injunction,

> restraining, enjoining or condoning the [D]efendants, and any other persons in active concert or participation with them, or any of them, from continuing, calling, threatening, instigating, directing, encouraging, causing, assisting, participating or condoning in any sit-in, work stoppage, refusal to work, strike, or any other form of concerted activity intended or tending to interrupt the normal operations of [Plaintiff] over any interpretation or application of the CBA.
>
> (**ECF No. 1 at 10 ¶ (1)**).

Defendants concede that the first requirement of a *Boys Markets* injunction is met per Article XIV of the CBA. (**ECF No. 19 at 22**). Article XIV of the CBA states:

> [i]f any controversy, dispute, conflict or question of interpretation arises
> between the Union and the Company that involves the meaning or
> application of a specific provision of this Agreement, or any controversy,
> dispute or conflict between the Union and the Company regarding an
> employee covered by this Agreement, the matter will be resolved in
> accordance with the procedure provided. Complaints and grievances are not
> to be discussed in the presence of Company clients.

 (**ECF No. 6-1 at 17**). Accordingly, a collective bargaining agreement between the parties

provides for mandatory binding arbitration, and thus, the first element is met. However,

Defendants dispute whether the second and third requirements are met, and that

regardless, Plaintiff has unclean hands and is thus barred from obtaining injunctive relief.

(**ECF No. 19 at 2, 4, and 22-23**).

### ii.  *Boys Markets* Injunction Second Requirement

As a reminder, the second requirement of a *Boys Markets* injunction is: "the

dispute giving rise to the concerted action which is sought to be enjoined is subject to

binding arbitration under that agreement." *Otis Elevator Co.,* 408 F.3d at 7 (citing *Nat'l*

*Elevator Indus.*, 776 F.2d at 376-77). Applied to this case, Plaintiff alleges that what

transpired on June 29, 2022, was a strike, or at the very least, a work stoppage, contrary

to the provisions of the CBA. (**ECF No. 1 at 8 ¶ 30**).

In their Motion to Dismiss, Defendants contend that Plaintiff incorrectly

characterizes the "peaceful short-lived union meeting" as a work stoppage or strike. (**ECF**

**No. 19 at 22**). Defendants maintain that "it was not a strike and, in any case, was over

within minutes, after which the unionized employees continued with their work

assignments." *Id.* Accordingly, Defendants maintain that the second requirement of a

*Boys Markets* injunction is not met, and thus, the Norris-LaGuardia's prohibition of

injunctive relief prevails. *Id.*

Plainly, the Court finds that at this stage in the proceedings, Plaintiff has

adequately plead that a strike, or at the very least, work stoppage, occurred on June 29, 2022. Plaintiff alleges that Barbés first blocked the entrance to the cemetery at approximately 9:17 am. (**ECF No. 1 at 5 ¶ 17**). He allegedly thereafter moved his truck to block the main entrance at 10:30 am. *Id.* ¶ 19. Afterwards, at approximately 11:00 am, Barbés conducted an assembly with all union members. *Id.* at 6 ¶ 23. Though the Complaint does not indicate the duration of the assembly, the Court is not persuaded that the guiding criterion as to whether a work stoppage or strike occurred is its duration. Other district courts have found a work stoppage occurred in as little as one minute. *See e.g. British Airways v. Intl. Ass'n of Machinists and Aerospace Workers AFL-CIO*, 1990 WL 48024, at *1 (E.D.N.Y. Apr. 4, 1990) ("In substance he found that nineteen work stoppages of between one and five minutes occurred beginning June 5, 1989[,] at the British Airways reservations center . . ."); *Pan Am. World Airways, Inc. v. Transport Workers Union of Am., AFL-CIO*, 1969 WL 11159, at *4 (S.D.N.Y. Aug. 8, 1969) ("[Defendant] employees concerted a work stoppage lasting approximately 10 minutes."); *Philadelphia Newspapers, Inc. v. Newsp. & Mag. Employees Union*, 647 F. Supp. 236, 244 (E.D. Pa. 1986), aff'd, 808 F.2d 1517 (3d Cir. 1986), and *aff'd sub nom. App. of Newsp. & Mag. Employees Union*, 808 F.2d 1517 (3d Cir. 1986) ("The work stoppage was approximately 30 minutes in duration.").

Construing the facts in the light most favorable to the Plaintiff—as the Court must do at this stage—even if the assembly "was over within minutes," Plaintiff was forced "to reschedule five (5) burials and meetings scheduled with clients" that day. *Id.* at 8 ¶ 29. Simply put, Plaintiff was unable to operate as it normally would because of the alleged actions by Defendants. Accordingly, at this stage of the proceedings, Plaintiff has sufficiently plead that a strike or work stoppage occurred for purposes of the parties' CBA.

### iii.     *Boys Markets* Injunction Third Requirement

In order to satisfy the third requirement of a *Boys Markets* injunction, the ordinary principles of equity must be met. *Otis Elevator Co.*, at 7 (citing *Nat'l Elevator Indus.*, at 376-77). The four principles are: (1) irreparable injury; (2) balancing of the equities; (3) consideration of the public interest; and (4) likelihood of success on the merits. *Verizon New Eng., Inc.*, 651 F.3d at 184 (citing *Boys Markets*, at 249).

As an initial matter, "[t]ypically, courts conduct an evidentiary hearing or oral argument before ruling on a motion for a preliminary injunction." *Commun. Workers of Am. v. Tel. Tech. Sys., Inc.*, 221 F. Supp. 3d 203, 208 (D.P.R. 2016) (citing *Aoude v. Mobil Oil Corp.*, 862 F.2d 890, 893 (1st Cir. 1988)). "This general practice applies in labor disputes as well," as "[e]videntiary hearings are useful to ensure the parties receive a fair opportunity to present their positions to the Court." *Commun. Workers of Am.*, 221 F. Supp. 3d at 208 (first citing 20 U.S.C. § 107; and then citing *Aoude*, 862 F.2d at 894). Therefore, a Court should only deny a request for preliminary injunction "without a hearing if it concludes as a matter of law that the [moving party's] allegations, even if proven, are insufficient to support the issuance of a preliminary injunction." *Piekosz-Murphy v. Bd. of Educ. of Cmty. High Sch. Dist. No. 230*, 858 F. Supp. 2d 952, 961-62 (N.D. Ill. 2012) (first citing *Schlosser v. Commonwealth Edison Co.*, 250 F.2d 578; then citing 11A Charles A. Wright et al., Federal Practice & Procedure § 2949; and then citing 13 James Wm. Moore et al., Moore's Federal Practice—Civil § 65.21). Essentially, "preliminary injunctions are denied without a hearing, despite a request for one by the movant, when the written evidence shows the lack of a right to relief so clearly that receiving further evidence would be manifestly pointless." 11A Charles A. Wright et al., Federal Practice & Procedure § 2949 (3d ed.); *Blount v. Redmond*, 649 F. Supp. 319, 330

(D. Me. 1986) (citing same); *M1 Holdings Inc. v. Members 1st Fed. Credit Union*, 22-cv-01162, 2022 WL 17487942, at *3 (N.D. Ill. Dec. 7, 2022) (citing same); *Gess v. USMS*, 20-cv-01790-PAB-STV, 2020 WL 8838280, at *17 (D. Colo. Dec. 10, 2020), *report and recommendation adopted in part sub nom. Gess v. USMS and 10th Cir. Dist. Ct.*, 20-cv-01790-PAB-STV, 2021 WL 423436 (D. Colo. Feb. 5, 2021) (citing same).

In ruling on this, the Court makes no determination as to the merits of Plaintiff's request for a preliminary injunction. The Court is merely deciding whether Plaintiff's request survives the instant motion to dismiss and may proceed to a hearing.

With regards to the first principle, in arguing Plaintiff does not adequately plead it will suffer irreparable harm absent a preliminary injunction, Defendants contend "lost goodwill and image, loss of customer confidence with regards to prompt and adequate burial, probable loss of customers, diminished volume of business, loss of revenue, claims or charges for failure to comply with applicable regulation and laws, and insurance claims," are merely conclusory allegations. (**ECF No. 19 at 2-3, 26-27**). Defendants also argue that they do not constitute irreparable harm, as they can be compensated by monetary damages. *Id.* at 29.

First, numerous courts have found that—if proven—injury to goodwill can constitute irreparable harm for purposes of a preliminary injunction. *Ross-Simons of Warwick, Inc. v. Baccarat, Inc.,* 102 F.3d 12, 20 (1st Cir. 1996); *El Día, Inc. v. Rossello*, 30 F. Supp. 2d 160, 168 (D.P.R. 1998); *Life Spine, Inc. v. Aegis Spine, Inc.*, 8 F.4th 531, 546 (7th Cir. 2021). This is because such harm "is not easily measured or fully compensable in damages." *Ross-Simons of Warwick, Inc.*, 102 F.3d at 20. Second, at this stage in the proceedings, Plaintiff need not *prove* its cause of action, it need only sufficiently state a *plausible* cause of action. *See Twombly*, at 556 ("[A] well-pleaded

complaint may proceed even if it appears that a 'recovery is very remote and unlikely.'" (quoting *Scheuer*, 416 U.S. at 236)). Accordingly, Plaintiff's allegations that it has suffered irreparable harm in the form of lost goodwill suffices at this stage of the proceedings.

With regards to the balancing of the equities and public interest factors, Defendants argue that "the Court cannot soundly conclude that the balance of the equities tip in favor of issuing the injunctive relief sought or that issuing an injunction in a case involving a labor dispute is in the public interest." (**ECF No. 19 at 30**). In so arguing, Defendants cite to the very existence of the Norris-LaGuardia Act, which was put in place "to restrict federal judicial intervention in labor disputes to promote employer recognition of unions and thus foster the practice of collective bargaining as an institution in the conduct of labor relations." *Id.* (internal quotations omitted).

Though the Court acknowledges that the Norris-La Guardia Act prohibits courts from issuing injunctions in labor disputes, the Supreme Court's holding in *Boys Markets* provides for an exception in limited circumstances, which Plaintiff alleges is present in this case. As a reminder, the purpose behind the *Boys Markets* injunction exception is to ensure:

> the effectiveness of arbitration agreements[], [as] the very purpose of arbitration procedures is to provide a mechanism for the expeditious settlement of industrial disputes without resort to strikes, lockouts, or other self-help measures. This basic purpose is obviously largely undercut if there is no immediate, effective remedy for those very tactics that arbitration is designed to obviate.

*Verizon New Eng., Inc.*, at 184 (quoting *Boys Markets*, at 249). Accordingly, per the Supreme Court's analysis, arguably it is in the public's interest to issue a preliminary injunction. Bearing in mind this rationale, the balance of equities is also not so clearly in Defendants' favor.

Finally, with regards to the likelihood of success on the merits factor, Defendants contend that Plaintiff "must show more than a mere possibility of success—rather, [it] must establish a strong likelihood that [it] will ultimately prevail." (**ECF No. 19 at 8**) (internal quotations and citations omitted). In so arguing, Defendants maintain Plaintiff is prohibited from obtaining injunctive relief under the Norris-LaGuardia Act, because it has insufficiently alleged liability on the part of the Union or López.[7] *Id.* at 27-28. The Court will address this argument in full below. Briefly, however, the Court finds Plaintiff has sufficiently alleged liability on the part of the Union and López at this stage of the proceedings. Accordingly, the Court does not find that holding a hearing on the matter would be "manifestly pointless" such that Defendants' Motion to Dismiss should be granted. 11A Charles A. Wright et al., Federal Practice & Procedure § 2949 (3d ed.).

Defendant's final argument as to the injunctive relief requested is that Plaintiff has unclean hands and therefore is barred from obtaining a preliminary injunction. The Court disagrees. Briefly,

> [o]ur courts have long held the view that he who comes into equity must come with clean hands. This is to say that we are skeptical of those who seek equitable relief when they themselves have engaged in misconduct. For the defense to apply, we have also routinely stated that the misconduct must be directly related to the merits of the controversy between the parties.

*Vaquería Tres Monjitas, Inc. v. Irizarry*, 587 F.3d 464, 480 (1st Cir. 2009) (internal citations and quotations omitted). Defendants contend that Plaintiff has unclean hands because it did not notify the Union or López in writing of the alleged work stoppage, as required by Section 5 of Article X of the CBA. (**ECF No. 19 at 32**).

---

[7]   Defendants also briefly state that "Section 303 of the LMRA, 29 U.S.C. § 7, preempts Plaintiff's tort claim because allegations of violence or imminent threats do not support those claims." (**ECF No. 19 at 27**). Plaintiff does not appear to be making any tort claim that would be preempted.

In response, Plaintiff cites to an email it sent to José Adrián Díaz at 11:34 am on June 29, 2022, whom it purports suffices as the Union, informing him of the alleged work stoppage and requesting his assistance in putting an end to it. (**ECF No. 24 at 17**); (**ECF No. 6-3 at 1**). The email address indicated is "cgtpuertorico@gmail.com," and the email was attached to the Complaint.[8] (**ECF No. 1-5 at 1**). Notwithstanding this, as Plaintiff points out in its response to Defendant's Motion to Dismiss, per Article XX of the CBA:

> Strikes, Lock-Outs
>
> In case of violation to the provisions of this Article, the affected party will not be obliged to exhaust the provisions regarding complaints, grievances and arbitration before resorting to the courts where the affected party can claim the loss of income it has sustained, plus all the damages sustained, understanding that the Union is not liable for unauthorized activity according to Article X.

(**ECF No. 6-1 at 24**); (**ECF No. 24 at 17 n. 23**). Accordingly, Defendants' unclean hands argument is unpersuasive at this time, and the Motion to Dismiss is therefore **DENIED** as to this argument.

## C. Plaintiff Has Insufficiently Pled Liability on the Part of López and the Union

Next, Defendants contend that "there are no well-pleaded facts that would sustain Plaintiff's conclusory allegation that either [the Union] or [] López authorized, ratified, or condoned the alleged acts or that they will continue unless restrained." *Id.* at 2. In so arguing, Defendants cite Section 106 of the Norris-LaGuardia Act which states:

> No officer or member of any association or organization, and no association or organization participating or interested in a labor dispute, shall be held responsible or liable in any court of the United States for the unlawful acts of individual officers, members, or agents, except upon clear proof of actual participation in, or actual authorization of, such acts, or of ratification of such acts after actual knowledge thereof.

---

[8]     The translated version can be found at (**ECF No. 6-3 at 1**).

29 U.S.C. § 106. Thereafter, Defendants assert "to obtain the preliminary injunction it seeks, Plaintiff has the burden to demonstrate 'upon clear proof' that [the Union] is responsible for the tortious acts that it asserts." (**ECF No. 19 at 24**). Moreover, Defendants briefly argue that "the conclusory allegations regarding [the Union] and [López] involvement are insufficient to establish Plaintiff's right to relief for tort as to the appearing Defendants." (**ECF No. 19 at 3**).

In response, Plaintiff contends Defendants are incorrectly asking the Court to apply a heightened "clear proof" standard at the pleading stage. The Court agrees. At this stage of the proceedings, Plaintiff is not required to demonstrate "upon clear proof" that the Union and López ratified or authorized the alleged work stoppage or strike in order be entitled to the relief requested.

Regardless, per Article X Section 5 of the CBA,

> [i]n case of any work stoppage, strike or related threat activity, the employer will notify the Union, and the Union will be obliged to answer for the non-authorization of the work stoppage, strike or threat over such activity, and will order employees to cease and desist of conducting such a work stoppage or strike immediately, after having received the notification.

(**ECF No. 6-1 at 13**). Accordingly, the Union had an affirmative duty to order its members to cease and desist from conducting a work stoppage or strike. Plaintiff alleges in its Complaint that "upon information and belief" López, as the President of the Union, "instigated, encouraged, authorized, and/or condoned [the] illegal sit in, work stoppage, and/or slowdown [which] occurred during the morning of June 29, 2022." (**ECF No. 1 at 3 ¶ 8**).

> [The] *Twombly* plausibility standard for determining whether pleadings are sufficient to state a claim, which applies to all civil actions, does not prevent a plaintiff from pleading facts alleged "upon information and belief" where the facts are peculiarly within the possession and control of the defendant,

or where the belief is based on factual information that makes the inference of culpability plausible.

*Lareños en Defensa del Patrimonio Histórico, Inc. v. Municipality of Lares,* 11-cv-1880, 2012 WL 13170973, at \*8 n.9 (D.P.R. June 29, 2012), *report and recommendation adopted in part*, 882 F. Supp. 2d 286 (D.P.R. 2012); *Arista Records, LLC v. Doe 3,* 604 F.3d 110, 120 (2d Cir. 2010); *Stone v. Trump*, 400 F. Supp. 3d 317, 341 (D. Md. 2019); *Wolo Mfg. Corp. v. ABC Corp.,* 349 F. Supp. 3d 176, 200-01 (E.D.N.Y. 2018); *Hedgeye Risk Mgt., LLC v. Heldman*, 271 F. Supp. 3d 181, 189 (D.D.C. 2017).

Plaintiff alleges it communicated with López at around 9:30 am and 10:30 am about Barbés' actions. (**ECF No. 1 at 5 ¶¶ 18-20**). It can reasonably be inferred that López condoned or ratified the work stoppage because Barbés did not desist from his actions after either communication, and only López would have the relevant evidence to prove or disprove this inference.[9] Accordingly, Defendants' Motion to Dismiss as to this point is **DENIED**.

### D. Plaintiff Did Not File a Separate Motion for Injunctive Relief Nor A Proposed Order

Finally, with regards to Defendants' final argument, Fed. R. Civ. P. 65(a)(2) states:

Consolidating the Hearing with the Trial on the Merits.

Before or after beginning the hearing on a motion for a preliminary injunction, the court may advance the trial on the merits and consolidate it with the hearing. Even when consolidation is not ordered, evidence that is received on the motion and that would be admissible at trial becomes part

---

[9]      Defendant cites to the proposition in *Fry v. Airline Pilots Ass'n, Intern.* that liability cannot "be established by an inference drawn solely from the fact that the union fails to take affirmative measures to stop such acts . . .." 88 F.3d 831, 842 (10th Cir. 1996). However, that case was at the summary judgment stage, and it has been established that "[P]laintiffs bear a heavier burden at the summary judgment stage," than at the pleading stage. *Velez-Rivera v. Agosto-Alicea*, 437 F.3d 145, 151 (1st Cir. 2006).

of the trial record and need not be repeated at trial. But the court must preserve any party's right to a jury trial. (Emphasis in original).

Other courts in this district have interpreted this to mean that Fed. R. Civ. P. 65(a)(2) *requires* a separate motion for temporary relief. *Perez-Molina v. Puerto Rico Electric Power Auth*., 13-cv-1638, 2018 WL 1010286, at *2 n. 2 (D.P.R. Feb. 20, 2018) (internal citations and quotations omitted). Though the Court does not read this to be a *requirement* per se, the Court concedes that "[a]s a matter of professional practice, counsel who seek temporary relief usually should make a motion for a preliminary injunction separate from the prayer for relief contained in the complaint." *Id*. Moreover, as Defendants point out, Plaintiff did not file a proposed order with its request for a preliminary injunction, as required by Local Rule 65.

Given the time that has passed since the filing of Plaintiff's initial Complaint, the Court at this juncture will neither grant nor deny Defendant's Motion to Dismiss as to this point. If Plaintiff is still seeking a preliminary injunction, it is **ORDERED** to file a motion—in accordance with professional practice—as well as a proposed order pursuant to Local Rule 65 by August 25, 2024. In the event Plaintiff is not still seeking a preliminary injunction, the case will continue its normal course.

## V.    Conclusion

Accordingly, for the reasons stated above, Defendants' Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART.**

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 10th day of August 2023.

**S/ MARÍA ANTONGIORGI-JORDÁN**
**United States District Judge**